## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| USI INSURANCE SERVICES, LLC, a Delaware limited liability company,<br><br>and<br><br>USI INSURANCE SERVICES NATIONAL, INC., formerly known as WELLS FARGO INSURANCE SERVICES USA, INC., a North Carolina corporation,<br><br>      Plaintiffs,<br><br>  vs.<br><br>LOCKTON COMPANIES, LLC, a Missouri limited liability company,<br><br>and<br><br>MICHELLE SHANER, an Illinois resident,<br><br>      Defendants. | Case No. <u>18-CV-0158</u><br><br>**JURY TRIAL DEMANDED** |

_____

### COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE RELIEF
_____

Plaintiffs USI Insurance Services, LLC ("USI"), and USI Insurance Services National, Inc. (formerly known as Wells Fargo Insurance Services USA, Inc., and referred to herein as "Wells Fargo" or the "Company"), for their Complaint against Defendants Lockton Companies, LLC ("Lockton"), and Michelle Shaner ("Shaner"), state and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Wells Fargo is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Valhalla, New York.

1

2.      Plaintiff USI is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Valhalla, New York.  USI's sole member is USI Holdings Corporation, which is a Delaware corporation with its principal place of business in the State of New York.

3.      Effective on or about December 1, 2017, USI acquired all the stock of Wells Fargo pursuant to a stock purchase agreement.  Wells Fargo continues to exist as a separate entity.  Through their relationship, Plaintiffs have a common interest in the outcome of this litigation.

4.      Defendant Lockton is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 444 West 47th Street, Suite 900, Kansas City, Missouri 64112.  Lockton is registered to do business in the State of Illinois as a foreign limited liability company.  Lockton's registered agent in Illinois is Corporate Creations Network, Inc., which has a street address of 350 S. Northwest Highway #300, Park Ridge, Illinois 60068.  Lockton's filings with the Secretary of State of Illinois indicate that its Assumed Name is Chicago Series of Lockton Companies, LLC, and that its Series Name is Lockton Companies, LLC-Chicago Series.  On information and belief, Lockton maintains an office in Chicago Illinois with the address 500 W. Monroe Street, Suite 3400, Chicago, Illinois 60661, where it does business under the name Lockton Companies-Chicago.

5.      On information and belief, no member of Lockton is a citizen of the State of Delaware, New York, or North Carolina.

FPDOCS 33569211.1

6.      Defendant Shaner is a citizen of the State of Illinois and resides in Chicago, Illinois.  Shaner was an employee of Wells Fargo until her sudden resignation on or about November 28, 2017.

7.      The very next day, November 29, 2017, Shaner became an employee of one of the Lockton family of companies, which on information and belief is Defendant Lockton doing business at its Chicago address under the name Lockton Companies-Chicago.

8.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, because this action includes claims arising under the laws of the United States.

9.      The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1367 over state law claims.

10.     Subject matter jurisdiction also exists by virtue of diversity of citizenship, 28 U.S.C. §1332.  The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship. Injunctive relief is also sought.

11.     Venue in this Court is appropriate under 28 U.S.C. §1391, because both Defendants are residents of this District, and because, on information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### I.      The Parties' Relationships.

12.     Wells Fargo is a nationwide insurance broker licensed in all 50 States and is engaged in the business of selling and providing insurance services and products to its

3

clients/customers and prospective clients/customers (the terms "clients" and "customers" are used interchangeably in this Complaint).

13.     USI is an insurance brokerage and consulting firm that delivers property and casualty, employee benefits, personal risk, program and retirement solutions to large risk management clients, middle market companies, smaller firms, and individuals.

14.     Lockton is an insurance broker and part of the Lockton family of companies, which describes itself on its website as "the world's largest privately held, independent insurance broker" (http://www.lockton.com/the-lockton-story, last visited Dec. 21, 2017).

15.     Lockton is a direct competitor of Plaintiffs.

16.     As noted, on information and belief, Lockton is also the current employer of Defendant Shaner.

17.     Until on or about November 28, 2017, Defendant Shaner was a Wells Fargo employee employed in the Company's Chicago, Illinois, office as an Account Executive 3 in the Company's Private Risk Management ("PRM") group.

18.     As a condition of Shaner's employment with Wells Fargo, and in consideration for becoming employed and compensated by Wells Fargo, Shaner entered into an agreement with the Company that provided that for two years after her resignation or other termination from employment with Wells Fargo, Shaner was (1) not to solicit, recruit, or promote the solicitation or recruitment of any employee of Wells Fargo for the purpose of encouraging that employee to leave employment with Wells Fargo; and (2) not to solicit, participate in, or promote the solicitation of any Wells Fargo client, customer, or prospective customer with whom Shaner had

4

material contact or regarding whom she received confidential information, for the purpose of providing competitive products or services.

19.     In addition, the agreement prohibited Shaner, both during her employment with Wells Fargo and at any time thereafter, from disclosing any trade secrets or confidential information of Wells Fargo, or using such information for the benefit of any person or entity except Wells Fargo, including information about the customers of Wells Fargo.  The agreement also required Shaner, upon her resignation, to immediately return to Wells Fargo all of its records and confidential information, including but not limited to information stored on computers and other electronic devices.

20.     On or about November 28, 2017, Shaner and seven other members of the PRM group resigned from Wells Fargo and immediately thereafter became employees of Lockton or an affiliated business entity.

21.     The resignation letters of the resigning PRM employees were virtually identical and show the concerted nature of their conduct.

22.     The commissions the resigning PRM group employees generated for Wells Fargo totaled approximately $25 million per year.

23.     Shaner is currently employed as Vice President/Account Executive at Lockton.

24.     Since resigning from Wells Fargo and beginning employment with Lockton, Shaner has been soliciting Wells Fargo customers, either on her own or in collaboration with Chad Elgas, one of the defecting members of the Company's PRM group who resigned with Shaner from Wells Fargo on November 28, 2017, and immediately became Lockton employees.

Elgas was a Senior Private Risk Advisor for the Wells Fargo PRM group and is currently a Vice President in Private Risk Management at Lockton.

## II. Wells Fargo's Business and Operations.

25. A key and principal part of Wells Fargo's business is providing insurance products and services that are unique to the particular needs and specifications of its clients and customers. Information concerning Wells Fargo's customers and the details of their insurance needs and policies, including but not limited to non-public internal procedures, programs, and forms, non-public lists of prospective and insured customers, non-public information compiled on behalf of Wells Fargo regarding such facts as habits and insurance needs of customers and prospective customers, locations and descriptions of insured properties or properties proposed to be insured, expiration dates of insurance policies, and insurance daily reports (hereinafter "Confidential Information," which is further defined below), is considered and treated as highly confidential within Wells Fargo and is not shared with anyone outside of the Company.

26. Wells Fargo has developed and maintained its Confidential Information through considerable expenditure of time, effort, and expense.

27. In addition to the time, effort, and money spent to develop this Confidential Information, Wells Fargo has also expended significant time, effort, and money to develop relationships with its customers; to learn the particular insurance needs, specifications, and requirements of its customers; to develop substantial contacts and goodwill with its customers; and to market and sell its insurance products and services to those customers.

28. Wells Fargo considers and treats all of its Confidential Information as having substantial competitive value to the Company.

29.     Wells Fargo's Confidential Information is neither generally known nor readily ascertainable by proper means from publicly available sources; is related directly to and used by Wells Fargo's business; and provides Wells Fargo with a competitive advantage over those who do not know this information.  The possession of Wells Fargo's Confidential Information would give competitors, particularly those like Lockton that compete directly with Wells Fargo by providing similar insurance brokerage services in the same area as Wells Fargo, an unfair economic advantage in developing, marketing, brokering, and selling competitive insurance services and products.

30.     Wells Fargo therefore has consistently used, and continues to use, reasonable and diligent efforts to protect and keep secret its Confidential Information.  These efforts include, but are not limited to, prohibiting access to the information by the general public; requiring employees to sign confidentiality agreements; limiting general employee access to the information; instructing employees not to share the information with competitors; and restricting access to its Confidential Information to Wells Fargo employees who agree to maintain its confidentiality and to use the Confidential Information only for the benefit of Wells Fargo.

## III.    Broker of Record.

31.     At all relevant times there was and still is a general custom and usage in the insurance brokerage industry that a broker of record is the entity authorized by the customer to negotiate insurance policy terms on the customer's behalf.

32.     At all relevant times, there was and still is a general custom and usage in the insurance brokerage business that the broker of record, for services performed, is entitled to commissions based upon a percentage of the insurance premiums payable with respect to the

7

insurance policies purchased by the customer.  In the ordinary situation, the customer pays the premium to the insurance company (which includes a charge for the commission to be paid to the broker of record), and the broker becomes entitled to receive commissions from the insurance company as those premiums are received by the insurance company from the customer.

33.     Thus, an insurance broker like Wells Fargo is entitled to receive a commission from the insurance company for every insurance policy on which Wells Fargo is listed as the broker of record.

34.     When a change in the broker of record occurs, the "new" broker of record is entitled to receive commissions from the insurance company for every policy on which it is listed as the broker of record, and the "old" broker of record is no longer entitled to receive such commissions.

## IV.     Shaner's Agreement with Wells Fargo.

35.     On July 31, 2014, as a condition of her employment with Wells Fargo, and in consideration of becoming employed and being compensated by Wells Fargo, Shaner entered into a Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions ("Agreement," a true and correct copy of which is attached hereto as **Exhibit A**).

36.     Section III of the Agreement is entitled "Non-Solicitation Of The Company's Customers and Employees" and provides:

> I agree that for a period of two (2) years immediately following termination or resignation of my employment for any reason, I will not do any of the following, directly or indirectly or through associates, agents, or employees:
>
>> a. solicit, recruit or promote the solicitation or recruitment of any employee or consultant of the Company for the purpose of encouraging

8

that employee or consultant to leave the Company's employ or sever an agreement for services;

b. solicit, participate in or promote the solicitation of any of the Company's clients, customers, or prospective customers with whom I had Material Contact and/or regarding whom I received Confidential Information, for the purpose of providing products or services that are in competition with the Company's products or services ("Competitive Products/Services"). "Material Contact" means interaction between me and the customer, client or prospective customer within one (1) year prior to my last day as a team member which takes place to manage, service or further the business relationship; or

c. Accept insurance business from or provide Competitive Products/Services to customers or clients of the Company:

   i. with whom I had Material Contact, and/or

   ii. were clients or customers of the Company within six (6) months prior to my termination of employment.

This two (2) year limitation is not intended to limit the Company's right to prevent misappropriation of its Confidential Information beyond the two (2) year period.

37.     Section II of the Agreement is headed "Trade Secrets And Confidential Information" and provides:

During the course of my employment I will acquire knowledge of the Company's Trade Secrets and other proprietary information relating to its business, business methods, personnel, and customers (collectively referenced as "Confidential Information"). "Trade Secrets" are defined as information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The Company's Trade Secrets include, but are not limited to, the following:

• the names, address, and contact information of the Company's customers and prospective customers, as well as any other personal or financial information relating to any customer or prospect, including, without limitation, account numbers, balances, portfolios, maturity and/or expiration or renewal dates,

9

loans, policies, investment activities, purchasing practices, insurance, annuity policies and objectives;

- any information concerning the Company's operations, including without limitation, information related to its methods, services, pricing, costs, margins and mark ups, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques, agent information, and processes;

- any other proprietary and/or confidential information relating to the Company's customers, employees, products, services, sales, technologies, or business affairs.

I understand that Records of the Company also constitute Confidential Information and that my obligation to maintain the confidentiality thereof continues at all times during and after my employment. "Records" include, but are not limited to, original, duplicated, computerized, memorized, handwritten or any other form of information, whether contained in materials provided to me by the Company, or by any institution acquired by the Company, or compiled by me in any form or manner including information in documents or electronic devices, such as software, flowcharts, graphs, spreadsheets, resource manuals, videotapes, calendars, day timers, planners, rolodexes, or telephone directories maintained in personal computers, laptop computers, personal digital assistants or any other device. These records do not become any less confidential or proprietary to the Company because I may commit some of them to memory or because I may otherwise maintain them outside of the Company's offices.

I agree that any Confidential Information of the Company is to be used by me solely and exclusively for the purpose of conducting business on behalf of the Company. I am expected to keep such Confidential Information confidential and not to divulge, use or disclose this information except for that purpose. If I resign or am terminated from my employment for any reason, I agree to immediately return to the Company all Records and Confidential Information, including information maintained by me in my office, personal electronic devices, and/or at home.

## V.     Code of Ethics & Business Conduct.

38.     Wells Fargo takes numerous steps to protect its Confidential Information in addition to requiring employees to sign agreements like the Agreement quoted above.  Such steps include, among other things, the policies set forth in Wells Fargo's Code of Ethics &

10

Business Conduct ("Code"), which employees must agree to as a condition of their employment with Wells Fargo.  The "Confidential Information" section of the Code provides, in pertinent part, as follows:

> Your role in privacy protection is critical. As a team member, you will have access to confidential information about Wells Fargo, its customers, team members, and vendors that you are obligated to protect from unauthorized disclosure. Such information is intended solely for use within Wells Fargo and is limited to those with a business need to know. Confidential information acquired by a team member through his or her employment must be held in the strictest confidence and, except for a business reason, must never be discussed with anyone – not even family members. Such information is to be used solely for corporate purposes and never for personal gain and may not be used to compete with Wells Fargo.

> You may not access confidential information without a business purpose. You must not disclose confidential information that you have obtained in the course of your employment to any other team member unless the other team member has a business need to know the information for the performance of his or her duties on behalf of Wells Fargo.

> Wells Fargo protects the private, personal, and proprietary information of customers, vendors, and team members. Confidential customer information may not be disclosed to persons outside Wells Fargo except when its disclosure is required by law or in accordance with Wells Fargo's privacy policies and customer agreements. In addition, Wells Fargo may have entered into a confidentiality or nondisclosure agreement to protect a third party's confidential information and to prevent unauthorized disclosure or use of that information. You must be careful to honor those agreements.
>
> *   *   *
>
> Improper release of or unauthorized access to confidential information damages our customers' trust in Wells Fargo and can result in loss of business and even legal action. It also reflects on your ability to do your job and is a violation of company policy and this Code.

39.    The "Proprietary Information" section of the Code provides that "[p]roprietary information is information that is the property of Wells Fargo."  It prohibits employees, among other things, from:

11

- Reveal[ing] any proprietary information about the company or its team members, customers, or vendors to anyone except properly designated team members.

  \*   \*   \*

- Disclos[ing] or us[ing] any proprietary information in a manner that is harmful to Wells Fargo, useful to competitors, or for your own or another's gain.

- Keep[ing] any originals or copies (in electronic or other form) of manuals, notebooks, drawings, notes, reports, proposals, other documents, materials, tools, or equipment or property belonging to Wells Fargo.

40.     Proprietary Information under the Code includes but is not limited to information regarding:

- Wells Fargo's business.

- The Company's financial performance, if it has not been publicly announced.

- Customers.

- Team members.

- Products, services, and pricing.

- Patents and other intellectual property Wells Fargo has not disclosed to the public, including inventions related to any of Wells Fargo's businesses.

- Systems plans and information.

- Data centers or other property information.

- Passwords and computer programs.

- Business plans.

- Marketing plans, strategies, and costs.

- Potential acquisitions and divestitures.

- Any nonpublic information that would be harmful to Wells Fargo if disclosed.

12

## VI.     Shaner Breaches Her Legal and Contractual Obligations.

41.     Unfortunately, Shaner has breached and is continuing to breach her legal and contractual obligations to Wells Fargo, with the active encouragement of her new employer, Lockton, and the cooperation of her former Wells Fargo colleague and current Lockton colleague Chad Elgas.  Elgas has actual knowledge of Shaner's Agreement with Wells Fargo, and on information and belief, so does Lockton.

42.     Shaner, in collaboration with Elgas, has been soliciting Wells Fargo's customers in direct violation of her Agreement, and improperly using the Company's Confidential and Proprietary Information in the process, in order to persuade Wells Fargo customers to terminate their relationships with Wells Fargo and transfer their business to Lockton, making Lockton broker of record instead of Wells Fargo.

43.     For example, on or about December 8, 2017, little more than a week after Shaner's sudden resignation from Wells Fargo, Shaner, together with Elgas, successfully solicited Wells Fargo customers Thomas Davis and Jessica Feshbach Davis to terminate their business relationship with the Company and transfer their business to Lockton.

44.     On or about December 14, 2017, Shaner and Elgas successfully solicited Wells Fargo customers Jack and Jeri Veach to terminate their business relationship with the Company and transfer their business to Lockton.  Attached hereto as **Exhibit B** is a true and correct copy of a December 8, 2017, letter from Chubb Personal Risk Services to Wells Fargo, informing Wells Fargo that it would no longer be producer of record on the Veaches' Chubb policies.

## COUNT I
## Violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030)
## (Against Shaner)

45.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 44.

46.     During her employment with Wells Fargo, Shaner had access to Wells Fargo's computer system.

47.     The Wells Fargo computer system to which Shaner had access constitutes a "protected computer" within the meaning of 18 U.S.C. §1030(e) because the computer system is used in interstate or foreign commerce or communication.

48.     On information and belief, during her employment with Wells Fargo Shaner exceeded her authorized access to Wells Fargo's computer system by obtaining information from Wells Fargo's computer system and thereafter transferring it to her personal electronic devices and/or to Lockton, with Lockton's knowledge, encouragement, and assistance, and by using such information on her own behalf and/or on behalf of Lockton, with Lockton's knowledge, encouragement, and assistance, in order to solicit Wells Fargo customers and otherwise unfairly compete with Wells Fargo.

49.     The information Shaner thus obtained included customer information, proprietary information, trade secrets, and other confidential information.

50.     As a result of such activities of Shaner, Wells Fargo suffered losses that have exceeded Five Thousand Dollars ($5,000) in value.

51.     In addition, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and have sustained damages, including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be

14

determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

## COUNT II
### Violation of the Defend Trade Secrets Act (18 U.S.C. §1831 et seq.)
### (Against Both Defendants)

52.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 51.

53.     The information Shaner took from Wells Fargo with the knowledge, encouragement, and assistance of Lockton constitutes trade secrets of Wells Fargo subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.

54.     This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use; it is not readily available to the public or to Wells Fargo's competitors. Wells Fargo spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

55.     Wells Fargo has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Company computer systems and records, requiring employees to sign agreements like the Agreement between Shaner and Wells Fargo, and having policies that expressly prohibit the use, removal, and disclosure of such information outside of Wells Fargo.

56.     On information and belief, Lockton aided, abetted, and facilitated Shaner's theft and misappropriation of Wells Fargo's trade secrets.  Additionally, Defendants are currently in possession of Wells Fargo's trade secrets and acquired that information by improper means.

FPDOCS 33569211.1

57.     The foregoing conduct constitutes an actual and threatened misappropriation and misuse of Wells Fargo's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.

58.     Shaner's misappropriation of Wells Fargo's trade secrets, and Lockton's material assistance and facilitation of the same, have caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

59.     Defendants willfully and maliciously misappropriated Wells Fargo's trade secrets, and Plaintiffs are therefore entitled to recover two times their damages and the reasonable attorney fees they incur in this action, appropriate royalties for the trade secrets that Defendants misappropriated, as well as any amount by which Defendants were unjustly enriched by their misappropriation.

**COUNT III**
**Violation of Illinois Trade Secrets Act, 765 ILCS §1065/1 et seq.,**
**(Against Both Defendants)**

60.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 59.

61.     Wells Fargo's Confidential and Proprietary Information constitute trade secrets subject to protection under the Illinois Trade Secrets Act.

62.     Wells Fargo's Confidential and Proprietary Information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use.

63.     Wells Fargo has spent significant sums, in terms of both financial and human resources, to develop and maintain its Confidential and Proprietary Information, which is of great value to any competitor, such as Lockton.

16

64.     Wells Fargo has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Company computer systems and records, requiring employees to sign agreements like the Agreement between Shaner and Wells Fargo, and having policies that expressly prohibit the use, removal, and disclosure of such information outside of Wells Fargo.

65.     As described above, Defendants threaten to and/or actually have misappropriated Wells Fargo's Confidential and Proprietary Information and have used and are continuing to use that information to solicit Wells Fargo's customers to terminate their relationships with Wells Fargo and to transfer their business to Defendants, and to otherwise unfairly compete with Wells Fargo.

66.     Defendants' misappropriation of Wells Fargo's Confidential and Proprietary Information have caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

67.     Defendants willfully and maliciously misappropriated Wells Fargo's trade secrets, and Plaintiffs are therefore entitled to recover two times their damages and the reasonable attorney fees they incur in this action, appropriate royalties for the trade secrets that Defendants misappropriated, as well as any amount by which Defendants were unjustly enriched by their misappropriation.

**COUNT IV**
**Breach of Contract**
**(Against Shaner)**

68.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 67.

69.     The Agreement is an enforceable contract between Wells Fargo and Shaner.

17

70.     Shaner has breached the Agreement by using Wells Fargo's Confidential and Proprietary Information to solicit, switch, and/or convert Wells Fargo's customers to other providers of insurance products and services, and/or by participating and assisting others in soliciting, switching, and/or converting Wells Fargo customers to other providers of insurance products and services by providing such others with access to Wells Fargo's Confidential and Proprietary Information.

71.     Shaner has breached the Agreement in that following her resignation on or about November 28, 2017, she has directly or indirectly solicited, accepted, or serviced Wells Fargo customers who were customers of the Company as of November 28, 2017.

72.     Shaner's breach of the Agreement has caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

**COUNT V**
**Breach of Fiduciary Duty/Duty of Loyalty**
**(Against Shaner)**

73.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 72.

74.     Shaner had a contractual and common law duty to maintain the secrecy of Wells Fargo's Confidential and Proprietary Information, to use such information only for Wells Fargo's benefit, and not to use such information for the purpose of competing with Wells Fargo.

75.     Shaner has breached her duty by relying on Wells Fargo's Confidential and Proprietary Information to improperly solicit, accept, service, switch, and/or convert Wells Fargo's customers to other providers of insurance products and services, and otherwise to unfairly compete against Wells Fargo.

FPDOCS 33569211.1

76.     Shaner's breach of her duty has caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

77.     Shaner's actions were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wells Fargo, entitling Plaintiffs to an award of punitive damages.

78.     Shaner will continue to breach her duty to Wells Fargo unless restrained by this Court.

**COUNT VI**
**Aiding and Abetting Breach of Fiduciary Duty/Duty of Loyalty**
**(Against Lockton)**

79.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 78.

80.     Lockton has assisted, aided, and abetted Shaner in the conduct constituting breach of her fiduciary duty and duty of loyalty to Wells Fargo, and continues to do so.

81.     Lockton has been and is aware of its role in assisting, aiding, and abetting Shaner in breaching her fiduciary duty and duty of loyalty to Wells Fargo.

82.     Lockton has knowingly and substantially assisted Shaner in the conduct constituting breach of her fiduciary duty and duty of loyalty to Wells Fargo, and continues to do so.

83.     Lockton's actions were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wells Fargo, entitling Plaintiffs to an award of punitive damages.

84.     Lockton's conduct has caused Plaintiffs damages and irreparable injury for which monetary damages alone are an insufficient remedy.

19

## COUNT VII
### Tortious Interference with Business Expectancy
### (Against Both Defendants)

85.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 84.

86.     Wells Fargo has a valid business expectancy and contractual relations in connection with each of its customers whom Shaner has solicited on behalf of Lockton, with Lockton's knowledge, assistance, and encouragement, for the purpose of taking their business from Wells Fargo and transferring it to Lockton.

87.     On information and belief, Shaner, with the knowledge, assistance, and encouragement of Lockton, intentionally interfered with Wells Fargo's business expectancy with respect to Company customers by contacting them individually to solicit their business away from Wells Fargo and to Lockton.

88.     Defendants have no justification for their intentional interference.

89.     Defendants' improper, unjustified, and tortious solicitations have caused Wells Fargo customers to terminate their relationships with the Company and replace the Company with Lockton as broker of record.

90.     Defendants' intentional interference has thus caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

91.     Defendants' actions were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wells Fargo, entitling Plaintiffs to an award of punitive damages.

92.     But for an exercise of the equitable powers of this Court, Plaintiffs will be irreparably injured and harmed by Defendants' tortious interference with business expectancy.

FPDOCS 33569211.1

93.     Defendants will continue to tortiously interfere with Plaintiffs' business expectancies unless restrained by this Court.

## COUNT VIII
### Tortious Interference with Contract
### (Against Lockton)

94.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 93.

95.     Shaner and Wells Fargo were parties to the Agreement, which was a valid and enforceable contract prohibiting Shaner from misappropriating, misusing, and failing to return the Company's Confidential and Proprietary Information, and from soliciting Wells Fargo customers.

96.     On information and belief, Lockton had actual knowledge of the Agreement and Shaner's commitments thereunder.

97.     On information and belief Lockton intentionally interfered with the Agreement by inducing and assisting Shaner to breach her commitments thereunder.

98.     Lockton has no justification for its intentional interference.

99.     Lockton's intentional interference has caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

100.    Lockton's actions were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wells Fargo, entitling Plaintiffs to an award of punitive damages.

101.    But for an exercise of the equitable powers of this Court, Plaintiffs will be irreparably injured and harmed by Lockton's tortious interference with the Agreement.

FPDOCS 33569211.1

102.    Lockton will continue to tortiously interfere with the Agreement unless restrained by this Court.

**COUNT IX**
**Unfair Competition**
**(Against Both Defendants)**

103.    Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 102.

104.    Defendants' conduct, as described above, constitutes an unfair method of competition.

105.    As a result of that conduct, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

106.    Such injury and damages include but are not limited to loss of valuable business, loss of profits and future profits, and loss of good will.

107.    Defendants' actions were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wells Fargo, entitling Plaintiffs to an award of punitive damages.

108.    Defendants will continue to engage in unfair competition against Wells Fargo unless restrained by this Court.

**COUNT X**
**Unjust Enrichment**
**(Against Both Defendants)**

109.    Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 108.

110.    As a result of Defendants' misconduct as set forth in this Complaint, Defendants have been unjustly enriched.

FPDOCS 33569211.1

111.     The retention of the benefits Defendants thereby wrongfully obtained is inequitable and they should therefore be required to disgorge their wrongful gains.

112.     Defendants' actions were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wells Fargo, entitling Plaintiffs to an award of punitive damages.

## COUNT XI
## Civil Conspiracy
### (Against Both Defendants)

113.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 112.

114.     Defendants agreed to engage and did engage in unlawful conduct for unlawful purposes as set forth above, including but not limited to soliciting Wells Fargo customers in violation of Shaner's Agreement, misappropriating Wells Fargo's Confidential and Proprietary Information, breaching Shaner's fiduciary duty to the Company, and tortiously interfering with Wells Fargo's relationships with its customers and prospective customers.

115.     Defendants knew their actions would cause damages and irreparable harm to Plaintiffs.

116.     Plaintiffs have suffered damages as a result of this conspiracy.

117.     The actions of Defendants as set forth above were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

## COUNT XII
## Permanent Injunction
### (Against Both Defendants)

118.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 117.

FPDOCS 33569211.1

119.    Plaintiffs request that this Court issue an injunction: (a) ordering Defendants to return to Wells Fargo the confidential, proprietary, and trade secret information of Wells Fargo still within their possession, custody, or control; (b) prohibiting Defendants from using any confidential, proprietary, and trade secret information of Wells Fargo, including but not limited to information regarding Wells Fargo customers, to solicit, service, switch and/or convert Wells Fargo's customers to other providers of insurance products and services; and (c) prohibiting Defendants, either directly or indirectly, from soliciting, accepting the business of, or servicing any Wells Fargo customer that was a customer of the Company as of the date of Shaner's resignation from the Company, November 28, 2017.

120.    By reason of the conduct set forth above, Plaintiffs have suffered great and irreparable injury.  Unless Shaner is enjoined from further breach of the Agreement, and Lockton is enjoined from facilitating, encouraging, and/or allowing the same, Plaintiffs will suffer additional irreparable injury by the continuing loss of Wells Fargo customers and the further disclosure of confidential, proprietary, and trade secret information, and will incur future economic loss which is incalculable.

121.    No damage to Defendants will result from injunctive relief.  Both Defendants can continue to sell insurance products and services, but cannot use the confidential, proprietary, and trade secret information of Wells Fargo, and Shaner cannot, directly or indirectly, solicit, accept, or service Wells Fargo customers either on her own behalf or on behalf of another individual or entity.

FPDOCS 33569211.1

122. Plaintiffs have no adequate remedy at law, as the damages in terms of money for the future loss of customers and confidential, proprietary, and trade secret information arising from Defendants' conduct cannot be measured or calculated.

123. The threatened harm to Plaintiffs is greater should injunctive relief not be ordered in that Shaner has violated and continues to violate the terms of the Agreement, Lockton is facilitating, encouraging, and/or permitting her to do so, and Defendants are in possession of Wells Fargo's confidential, proprietary, and trade secret information.

124. The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary, and trade secret information, and non-solicitation, are enforced.

125. Accordingly, Plaintiffs request that this Court issue permanent injunctive relief as follows:

    a.    Issue an order requiring Defendants to return to Wells Fargo all confidential, proprietary, and trade secret information belonging to Wells Fargo (including but not limited to the Company's Confidential and Proprietary Information) that is in their possession, including but not limited to all such information in electronic form;

    b.    Issue an order instructing Shaner to delete no matter from her personal computer(s), cell phones, and all other electronic devices, and to turn such devices over to Plaintiffs' counsel for review by investigators chosen by Plaintiffs;

    c.    Issue an order enjoining and restraining Shaner for two years from the date of the order from:

        i.    directly or indirectly soliciting, accepting, and/or servicing any Wells Fargo customer who was a Wells Fargo customer as of November 28, 2017;

        ii.    directly or indirectly switching and/or converting Wells Fargo customers to other providers of insurance products or services, including but not limited to Lockton;

FPDOCS 33569211.1

d.      Issue an order permanently enjoining and restraining Shaner from:

     i.      directly or indirectly making use of confidential, proprietary, and trade secret information belonging to Wells Fargo (including but not limited to the Company's Confidential and Proprietary Information); and

     ii.      otherwise breaching the terms of the Agreement.

e.      Issue an order permanently enjoining and restraining Lockton from using any confidential, proprietary, or trade secret information of Wells Fargo to solicit Wells Fargo's customers to switch their business to Lockton;

f.      Award judgment in Plaintiffs' favor and against Defendants; award Plaintiffs damages, including but not limited to punitive and exemplary damages; award Plaintiffs their costs expended herein, including reasonable attorneys' fees; and award Plaintiffs such other and further relief as may be just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment in their favor and against Defendants for: permanent injunctive relief as set forth in Count XII; damages that are fair and reasonable, including actual damages, punitive damages, and exemplary damages; equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees; and such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

Plaintiffs hereby demand a jury trial on all causes of action and claims.

Dated: January 9, 2018            Respectfully submitted,

/s/ *Joel W. Rice*
Joel W. Rice, Esq.
jrice@fisherphillips.com
James M. Hux, Jr., Esq.
jhux@fisherphillips.com

FISHER & PHILLIPS LLP

26

10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
Tel.: (312) 346-8061
Fax: (312) 346-3179

ATTORNEY FOR PLAINTIFFS

FPDOCS 33569211.1